Filed 6/14/21  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C090693 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE009867) |
| v. | |
| OMAR DUSHAUN SMITH, | |
| Defendant and Appellant. | |

A jury found defendant Omar Dushaun Smith guilty of two counts of being a felon in possession of a firearm and one count of resisting, obstructing, or delaying peace officers in the discharge of their duties.  Defendant raises two arguments on appeal.  First, defendant challenges the trial court's order sustaining the prosecution's objection to the admission of lay testimony intended to establish defendant suffers from extreme panic attacks.  Second, defendant argues the prosecution submitted a legally invalid theory to the jury during closing arguments and it is likely the jury found him guilty on that theory.  Finding no merit in defendant's arguments, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was driving a car with codefendant LeRoy Wandick, who defendant refers to as his uncle, in the passenger seat when police officers observed him failing to make a complete stop. The officers activated their overhead lights and, when defendant failed to stop immediately, followed the vehicle. The officers observed at least one of the vehicle occupants "bending over and moving around," before defendant pulled the vehicle over and stopped.[1]

Upon stopping, defendant got out of the vehicle. While officers were "dealing with Defendant," Wandick moved into the driver's seat and started revving the engine. Defendant took off running when the officers turned their attention to Wandick. One of the officers chased defendant and subdued him.

After defendant and Wandick were placed in the back of the police vehicle, the officers searched defendant's car and located a backpack on the front passenger floorboard. The backpack contained two loaded handguns as well as other objects that belonged to Wandick. During the search, defendant and Wandick had a conversation recorded by audio and visual equipment in the police vehicle. In the transcript of the recording, defendant is heard saying, "[m]y fingerprints is on that gun." In a conversation with one of the officers before being placed into the police vehicle, recorded by a body-worn camera, and again once in the police vehicle, Wandick repeatedly claimed the guns belonged to him. No fingerprints were recovered from either gun. The parties stipulated that defendant was previously convicted of a felony.

---

[1]     In his briefing, defendant states only Wandick was bending over and moving. The People state *both* defendant and Wandick were bending over and moving. The officer's testimony on this issue is ambiguous as to whether *both* defendant and Wandick were "bending over and moving around."

Defendant and Wandick were tried in the same trial by the same jury. On September 20, 2019, the jury found defendant guilty of being a felon in possession of a firearm, and resisting, obstructing, or delaying police officers. Defendant was sentenced to an aggregate term of four years and 120 days on October 18, 2019. On the same day, defendant filed a notice of appeal.

Additional facts pertinent to each issue are included in the Discussion.

## DISCUSSION

### I

### *The Trial Court Did Not Abuse Its Discretion In Finding*
### *The Proposed Panic Attack Testimony Inadmissible*

Defendant argues the trial court's exclusion of evidence related to his panic attacks prohibited him from presenting a complete defense, violating his constitutional right thereto. Specifically, defendant maintains that "[e]vidence of [his] tendency to panic in stressful situations should have been admissible to rebut the prosecution's theories of guilt. . . . Whether [defendant] had a tendency to go into a severe state of panic was relevant to the issue of whether he 'willfully' intended to resist/delay/obstruct the officer's performance of their [*sic*] duties in violation of [Penal Code] section 148, subdivision (a), for example, when he failed to immediately pull over and, later, when he ran. . . . More importantly, however, [defendant's] state of mind in fleeing was highly relevant to rebut the prosecution's theory that [defendant's] flight established consciousness of guilt." Defendant further asserts that, to the extent the argument was forfeited, his counsel was ineffective in failing to preserve the challenge at trial.

The People argue defendant's proffered testimony was properly excluded because it constituted improper lay testimony and was likely to mislead the jury.

We conclude the trial court did not abuse its discretion in finding the proffered evidence inadmissible under Evidence Code section 352. As such, we do not address defendant's lay witness testimony or ineffective assistance of counsel arguments. We do,

3

however, briefly consider defendant's argument that the evidentiary ruling violated his constitutional right to present a complete defense. We conclude no such violation occurred.

A

*Additional Facts*

At trial, outside the presence of the jury, the prosecution raised concerns regarding the witness testimony defendant planned to elicit from his fiancée, Lonyeua Sellers. The prosecutor explained defense counsel "intends to ask questions from the civilian witness that [defense counsel] is calling, having her testify that Defendant Smith has panic attacks. . . . [¶] I'm objecting to any testimony regarding Defendant Smith's panic attacks, mental health issues, anything in that realm at all, as irrelevant; and even if it were relevant, as speculative and improper expert opinion."

Defense counsel countered, analogizing that he "would anticipate this coming in is if someone testified: Is this person afraid of water? Yes, I have seen this person at the beach running away, staying very far from water." "[T]hey can observe that person's activities. I have seen this person do actions to avoid traveling on a boat; right? There are ways in which we can commonsensically get some insight into the mental state of another person." "What she would testify to is she's witnessed my client have panic attacks in the past so extreme that he calls an ambulance. The ambulance comes, they take him to the hospital, and he gets released shortly thereafter. That is what she would testify to, which is basically the testimony of a percipient witness."

The prosecutor disagreed, stating: "First, it's irrelevant that he has panic attacks. And on top of that, the fact that it's caused by a panic attack requires an expert opinion. That is not just something that a lay witness can say, [y]ou're having panic attacks. So my objection is the same."

4

The trial court sustained the prosecution's objection.  The court explained the proffered testimony was improper lay opinion and had Evidence Code section 352 issues because it lacked probative value and posed a risk of misleading the jury.

B

*The Proffered Testimony Would Have Produced Only Speculative Inferences*

"Only relevant evidence is admissible at trial.  [Citation.]  Under Evidence Code section 210, relevant evidence is evidence 'having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.'  A trial court has 'considerable discretion' in determining the relevance of evidence.  [Citation.]  Similarly, the court has broad discretion under Evidence Code section 352 to exclude even relevant evidence if it determines the probative value of the evidence is substantially outweighed by its possible prejudicial effects.  [Citation.]  An appellate court reviews a court's rulings regarding relevancy and admissibility under Evidence Code section 352 for abuse of discretion.  [Citation.]  We will not reverse a court's ruling on such matters unless it is shown ' "the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Merriman* (2014) 60 Cal.4th 1, 74.)

Defendant asserts his "tendency to go into a severe state of panic" was relevant to negating the specific intent required to obstruct, resist, or delay the officers in the performance of their duties and rebutting the prosecution's theory that defendant's flight showed a consciousness of guilt.  We find no merit in this argument.  Defendant made no proffer indicating he *had* a panic attack during the interaction with the police or that the prior panic attacks occurred under similar circumstances.  Thus, any testimony regarding defendant's prior panic attacks would produce only a *speculative* inference that defendant perhaps had one during the interaction with the police.  This was not, for example, an instance where the witness was testifying as to what she observed *during* the incident.  The " 'exclusion of evidence that produces only speculative inferences is not an abuse of

5

discretion.' " (*People v. Cornwell* (2005) 37 Cal.4th 50, 81, disapproved of on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.) The proffered testimony further did not tend to logically, naturally, or by reasonable inference establish material facts as to defendant's specific intent. (See *People v. Hamilton* (2009) 45 Cal.4th 863, 940 [" ' " 'The test of relevance is whether the evidence tends 'logically, naturally, and by reasonable inference' to establish material facts such as identity, intent, or motive' " ' "].)

None of the Evidence Code section 352 cases upon which defendant relies supports his position. (Citing *People v. McAlpin* (1991) 53 Cal.3d 1289; *People v. Reeder* (1978) 82 Cal.App.3d 543; *People v. Sotelo-Urena* (2016) 4 Cal.App.5th 732.)

In *McAlpin*, our Supreme Court reviewed the exclusion of evidence in a case where the defendant was convicted of nonviolent lewd conduct with a child under the age of 14. The court considered the exclusion of "proposed testimony of [the] defendant's three additional character witnesses that in their opinion defendant [wa]s not a 'sexual deviant,' i.e., in the words of defendant's offer of proof, 'a person of lustful or lewd conduct with children.' " (*People v. McAlpin*, *supra*, 53 Cal.3d at pp. 1289, 1308.) As to the female character witnesses, the court found the trial court erred in excluding their proposed testimony "that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children . . . ." (*Id*. at p. 1309.) The court reasoned that, "[b]ecause the latter conclusion of the witnesses was based on their direct observation of defendant's behavior with their daughters, it was both a proper subject of lay opinion testimony and relevant to the charge of child molestation." (*Ibid*.) The court further disagreed with the trial court's conclusion that the probative value of the proposed testimony was outweighed by the time it would take to introduce it and the confusion it would cause. (*Id*. at p. 1310, fn. 15.)

6

There are no meaningful similarities between *McAlpin* and this case. In *McAlpin*, the defendant's behavior with children was directly at issue and the excluded evidence tended to show defendant had a history of acting in a manner contrary to the criminal behavior with which he was charged in that case. (*People v. McAlpin*, *supra*, 53 Cal.3d at pp. 1304-1305.) Here, defendant did not argue that he had a panic attack during the incident and the proffered testimony did not seek to establish that defendant had panic attacks under circumstances similar to the incident. *McAlpin* thus does not assist defendant.

*Reeder* is also inapposite. Defendant asserts "*Reeder* held that Evidence Code section 352 may not be applied to exclude 'evidence, the probative value of which is *stronger* than the *slight*-relevancy category and which tends to establish a defendant's innocence . . . .' " (Quoting *People v. Reeder*, *supra*, 82 Cal.App.3d at p. 552.) The full quote from *Reeder* actually provides that "a defendant's due process right to a fair trial requires that evidence, the probative value of which is *stronger* than the *slight-relevancy* category and which tends to establish a defendant's innocence, cannot be excluded on the theory that such evidence is prejudicial to the prosecution." (*Ibid*.) Here, the trial court did not exclude the evidence because it was prejudicial to the prosecution; rather, the trial court found the proffered evidence lacked probative value and could mislead the jury.

Moreover, *Reeder* is also distinguishable as to that court's probative value finding, upon which defendant relies.[2] The defendant in *Reeder* was convicted of selling heroin. (*People v. Reeder*, *supra*, 82 Cal.App.3d at p. 547.) The defendant attempted to submit evidence showing that he strongly disliked his codefendant and thus would not have engaged in narcotics dealings with him. (*Id.* at p. 550.) The trial court excluded such

---

[2]  Defendant asserts that, as in *Reeder*, "the trial court erred as a matter of law by excluding evidence related to [defendant's] character as it would have helped explain [defendant's] possible state of mind at the time of the charged offenses."

7

evidence, but the appellate court "conclude[d] that the trial court's ruling in excluding the proffered evidence constituted prejudicial error." (*Ibid.*) The court explained that "from this mental fact of *dislike*, it is reasonable to make an inference that *defendant* acted in conformity with such *dislike* and did *not* furnish the samples of cocaine and heroin to [the codefendant] and did *not*, at the instigation of [the codefendant], sell heroin to [another]." (*Ibid.*) In contrast to *Reeder*, as explained *ante*, here, any inferences drawn from the proffered testimony would have been speculative and thus likely to mislead the jury, as the trial court correctly determined. This case is thus not like *Reeder*.

Finally, the facts in *Sotelo-Urena* are materially different from this case. In *Sotelo-Urena*, the defendant was tried for first degree murder and sought to introduce expert testimony regarding homeless individuals being the victims of crime at a significantly higher rate than housed individuals "via an expert prepared to testify that as a result of this higher rate of victimization, homeless individuals experience a heightened sensitivity to perceived threats of violence. This evidence, [the] defendant submitted, was relevant to his claim that he acted in self-defense or, at the very least, imperfect self-defense. The trial court excluded the testimony on the ground that it was irrelevant to [the] defendant's claim that he actually and reasonably believed he needed to use lethal force to defend himself -- that homelessness was a 'common experience with the jurors and not subject to expert testimony.' " (*People v. Sotelo-Urena*, *supra*, 4 Cal.App.5th at pp. 736-737, 741.) The appellate court disagreed and reversed. (*Id*. at p. 737.)

The appellate court in *Sotelo-Urena* explained "[a] defendant claiming self-defense or imperfect self-defense is required to 'prove his own frame of mind.' [Citations.] Because defendant's frame of mind was at issue, the jury in [the] defendant's trial was expressly instructed that, 'In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant.' [Citation.] In other words, the jury was to evaluate [the] defendant's belief in the need to use lethal force *from his perspective*. Evidence that would assist the jury in evaluating the situation from

defendant's perspective was thus relevant." (*People v. Sotelo-Urena*, *supra*, 4 Cal.App.5th at p. 745.)

Defendant asserts "*Sotelo-Urena*, first, rejected the trial court's relevancy analysis, given the defendant's frame of mind in killing the victim was squarely at issue in the murder trial. [Citation.] *Sotelo-Urena*, then, highlighted that evidence establishing a defendant's tendency to overreact is highly relevant to explaining the defendant's reaction on a given occasion. [Citation.] Finding the jury's assessment as to the defendant's likely mental state in stabbing the victim was essential, among other things, to their analysis of the intent element, *Sotelo-Urena* found the lower court's exclusion constituted reversible error."

Again, the problem with defendant's argument is that he fails to explain how the fact that he had some panic attacks in the past was probative of any issue in this case. As we explained *ante*, it was not. As such, *Sotelo-Urena* is different from this case. In *Sotelo-Urena*, the proffered evidence about overreacting during the event was the very behavior in question -- whether defendant acted in self-defense or imperfect self-defense. (*People v. Sotelo-Urena*, *supra*, 4 Cal.App.5th at p. 744.) The defendant's heightened sensitivity to perceived threats of violence was relevant to the defendant's mental state at issue in that case. (*Id.* at p. 745.)

Defendant has failed to show the trial court abused its discretion in a "manner that resulted in a manifest miscarriage of justice." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Defendant has thus not met his burden of showing prejudicial error requiring reversal.

C

*The Trial Court Did Not Violate Defendant's Right To Present A Complete Defense*

Defendant cites *Chambers v. Mississippi* (1973) 410 U.S. 284 [35 L.Ed.2d 297] for support and argues the trial court's evidentiary exclusion violated his right to present a complete defense. Defendant asserts that his "fundamental rights to due process and

9

confrontation mandate a defendant be permitted to call witnesses and introduce testimony to rebut the charges against him." Although defendant cites and summarizes *Chambers*, he fails to explain how the reasoning in that case applies here.

In *Chambers*, the United States Supreme Court invalidated a state's hearsay rule on the ground that it abridged the defendant's right to "present witnesses in his own defense" and concluded "the exclusion of this critical evidence, coupled with the State's refusal to permit [the defendant] to cross-examine [a witness], denied him a trial in accord with traditional and fundamental standards of due process." (*Chambers v. Mississippi*, *supra*, 410 U.S. at p. 302 [35 L.Ed.2d at pp. 312, 313].) The court specifically stated, "we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." (*Id*. at p. 303 [35 L.Ed.2d at p. 313]) As defendant acknowledges, to determine whether the exclusion of evidence violates the federal standard, as determined in *Chambers*, depends on whether the excluded evidence was vital to the defendant's defense. (Citing *People v. Cornwell*, *supra*, 37 Cal.4th at p. 82.)

As our Supreme Court said in *Cornwell*, when it discussed the applicability of *Chambers*, "[a] defendant has the general right to offer a defense through the testimony of his or her witnesses [citation], but a state court's application of ordinary rules of evidence -- including the rule stated in Evidence Code section 352 -- generally does not infringe upon this right." (*People v. Cornwell*, *supra*, 37 Cal.4th at p. 82.) "Although the high court in *Chambers* determined that the combination of state rules resulting in the exclusion of crucial defense evidence constituted a denial of due process under the unusual circumstances of the case before it, it did not question 'the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures.' " (*Ibid.*) As our Supreme Court also more recently explained: " ' "Although we recognize that a criminal defendant has a constitutional right to present all relevant evidence of *significant* probative value in [her] favor [citations], '. . . the

proffered evidence must have more than "slight-relevancy" to the issues presented.' " ' " (*People v. Nieves* (2021) 11 Cal.5th 404, 445.)

Where, as in *Cornwell*, "the excluded evidence in the present case was not so vital to the defense that due process principles required its admission," the exclusion of the panic attack testimony under Evidence Code section 352 did not violate defendant's federal constitutional right to present a defense. (*People v. Cornwell*, *supra*, 37 Cal.4th at p. 82.) Indeed, although defendant notes "the issue is whether the excluded evidence was 'vital,' " he makes no attempt to argue the excluded evidence was vital *in this case*. As we explained *ante*, the excluded evidence was not of significant probative value. Thus, defendant has failed to demonstrate that *Chambers* has any application under the facts presented here.

Defendant further asserts that, "as in *Reeder*, the exclusion of evidence violated the federal constitution" because, "the proffered evidence was not merely impeachment evidence that might have undermined a witnesses' credibility but, rather, spoke to the defendant's culpability directly." In *Reeder*, discussed *ante*, the appellate court determined the trial court was not "justified in exercising [its] discretion under Evidence Code section 352 to exclude evidence of significant value to defendant because of the danger of substantial prejudice to a codefendant." (*People v. Reeder*, *supra*, 82 Cal.App.3d at pp. 553-554.) Here, in contrast to the defendant in *Reeder*, defendant has failed to demonstrate how the proffered evidence had *any* probative value at the trial level and now, again, on appeal -- as is his burden.

11

## II

*Defendant's Prosecutorial Error Claims Are Forfeited And*

*His Ineffective Assistance Of Counsel Argument Fails*

Defendant argues the jury was misled because the prosecution submitted a legally invalid theory of possession to the jury during closing argument.[3] Specifically, defendant claims that the prosecution argued a definition of possession used for robbery, including an understanding of constructive possession, that defendant maintains has been held by our Supreme Court to not apply to unlawful possession of a firearm. In defendant's view, "[i]n doing so, the prosecutor denied having any obligation to prove [defendant] ever *actually* exercised and/or *intentionally* exercised possession, whether constructive or actual, as to either gun, much less both." Defendant further asserts that the prosecutorial error resulted in the jury finding him guilty on a legally invalid theory because "it is reasonably likely that at least one juror convicted [defendant] without finding [defendant] had ever *intentionally exercised* a right of possession over *both* guns at any point in the past." To the extent we deem the argument forfeited because defense counsel failed to object to the prosecutor's closing argument and ask for clarifying instructions, defendant asserts he is entitled to relief based on a denial of his Sixth Amendment right to the effective assistance of counsel.

The People initially maintain that defendant's claim of prosecutorial error is forfeited. The People further argue the prosecutor noted the proper theory of guilt during closing argument, and, in the alternative, any error in that regard was harmless.

We conclude, first, that defendant's claim of prosecutorial error was not properly preserved at the trial level and thus forfeited. Second, to the extent clarifying instructions

---

[3] Defendant confusingly frames this issue as an instructional error claim. We agree with the People that defendant's argument amounts to a prosecutorial error claim instead. The prosecution does not instruct the jury; the court does.

should have been provided, defendant similarly failed to properly preserve that issue for appeal.  Finally, we conclude defendant has not demonstrated his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and thus we find no merit in his ineffective assistance of counsel argument.

A

*Additional Facts*

The trial court provided the following pertinent jury instructions.  "To prove that a defendant is guilty of [unlawfully possessing a firearm, Penal Code section 29800], the People must prove that, number one, the defendant possessed a firearm; two, the defendant knew that he possessed the firearm; and, three, the defendant had previously been convicted of a felony."  "A person does not have to actually hold or touch something to possess it.  It is enough if the person has control over it, or the right to control it either personally or through another person.  Two or more people may possess something at the same time.  But mere proximity or access to the weapon standing alone is not sufficient evidence of possession."

During closing argument, the prosecutor expanded on the above.  "A person does not have to hold or touch something to possess it.  A lot of times people will think, like, only if you were holding it, you're possessing it; right?  So, yes, I'm possessing this little laser pointer thing, but I'm also possessing my binder over there.  It's my binder.  I have a right to go over and use it if I want to.  So just because I'm not touching it, I'm still possessing it.  So a person doesn't have to hold or touch something to possess it.  It is enough that someone has control over it, or the right to control it.  So what we're talking about is a right to control. . . .  [¶]  Two or more people may possess something at the same time.  So there are multiple people who could have the right to possess one thing. . . .  [¶]  Mere proximity to the weapon by itself is not enough.  Of course, if something is next to you, and you don't know it, then you're not possessing it."

13

"What is important when you're looking at a right to possess is the relationship between the people involved. So is it a family relationship, husband/wife, mother/son, or parent/child, cousins, nephew and uncle, they have often time [*sic*] a family relationship where they will have the right to possess something of another person in their family. Gang members often have rights to possess each others [*sic*] weapons, that is something that is kind of a common example. Friends have rights to possess each other's items."

The prosecutor then provided the following example: "Say [defendant and Wandick] get into the car, maybe [defendant] is in the driver's seat and he puts his gun in the console, the little kind of compartment in the driver door, and . . . Wandick gets in the passenger seat and puts his gun in the little console, the passenger door compartment, and then they're driving along. They switch positions in the car, and [defendant] decides to get in the passenger seat and . . . Wandick is now driving the car. Let's say at that moment they get shot at. So they grab their guns, and they go to shoot back at whatever car is shooting at them. If that were to happen, it doesn't matter that actually it was Defendant Smith's gun in that compartment of the driver door. You better believe Defendant Wandick is going to be able to grab it and fire back. It doesn't matter that Defendant Wandick's gun were [*sic*] in the passenger side compartment of that door because Defendant Smith can grab it and shoot back because of their relationship." Defense counsel objected, "This is not proper argument. This is pure speculation at this point as to future dangers and to the public that are posed by these defendants." The prosecutor countered that she was "[e]xplaining the right to possess." The trial court sustained the objection to "the extent of discussing speculation about shooting the gun."

The prosecutor continued, "Obviously, there is no evidence of shooting in this case. We're not talking about shooting. I'm just explaining if a situation were to arise they can use each other's guns, so it doesn't matter that one person owns one gun and one person owns the other. If something were to happen and they both have their guns there, there's not going to be an issue because they are nephew and uncle that [*sic*] they can use

14

each other's guns if a situation were to arise. . . .  [¶]  So it doesn't matter, like I was saying, which gun belongs to which person.  We're talking about the family relationship.  These are two people [who] are close.  Obviously, they are close enough that they're both going to put their guns in one backpack together to try to hide the guns. . . .  [¶]  These two people have a close relationship, and because of that close relationship, regardless of whether they ever intended to use each other's guns, regardless of whether maybe both guns belonged to Defendant Smith or Defendant Wandick, regardless of whether or not they ever planned to, whether or not they have ever held each other's guns, because of their relationship they have the right to possess the other person's guns or both guns in the car, so that is what we're talking about.  You have to look at the relationship and see obviously they have the right to possess each other's guns."

Defense counsel addressed the prosecutor's possession arguments during his closing argument.  "If there is a disagreement about the law, you have the instructions, you can ask for more direction, if necessary."  "[T]he People must prove that the defendant possessed a firearm, and that the defendant knew that he possessed the firearm.  What does that mean?  Just say my girlfriend hands me a purse, I have the purse, right, and there might be something in that purse, I don't know, I have not looked in it, right, they have to prove both the possession and the knowledge is occurring at the same time."

"So let's return to the instructions.  The defendant possessed a firearm, the defendant -- I'm cutting stuff out for the sake of brevity, and to go [*sic*] the parts that are important.  The defendant possessed a gun, the defendant knew that he possessed a gun.  Where is the evidence that he actually touched it?  I know there is evidence that he thought he may have; right?  But where is the evidence that he touched it?  Where is the evidence that he touched which gun?  The [district attorney] can't say to you that you have got to convict him of one or the other and they can't prove which one.  They have got to be able to prove one, so that is insufficient.  So which one did he touch, if he did, in fact, touch it?  Where is the evidence of the right of control?  If it was Ms. Sellers

15

coming in here and taking the fall for him, I can see this story making a little more sense, but Mr. Wandick is -- where the evidence that he is so close to Mr. Smith, right, that they have some sort of relationship where he would take -- he would take the fall for him?"

The prosecutor responded in rebuttal with the following. "I just want to address a couple of things that [defense counsel] said in his closing argument. [¶] . . . [¶] He said that, well, the [prosecutor] can't prove which person goes to which gun, and who owns which gun, and so, therefore, she is conceding herself that the defendants are not guilty of either charge one or charge two. I said this in my first closing argument, it's not required that we prove which defendant goes to which gun. That is why I was making that distinction between ownership and right to control. . . . We're not talking about ownership. We're talking about right to possess like I was talking about earlier, and what we're looking at with the right to possess for firearms is the relationship with the two people."

"Are these two people who would have a right to possess a firearm if they wanted to, if they wanted to grab that firearm and use it? The answer is yes. Because of their [sic] relationship between Defendant Smith and Wandick, uncle and nephew, whatever it may be, they have the right to possess the firearms of each other, regardless of who actually had which gun in this case." "So I just wanted to clarify that area of the law. It's not required ownership, of course, for possession of a firearm." "Now, of course [defense counsel] wishes he would have had a lawyer advising him when he was in the back seat of the patrol vehicle, because, of course, he would not have said, my prints are on that gun. He would not have confessed to handling one of those guns. He would not have made an incredibly incriminating statement if he had a lawyer advising him. Of course he wishes he did not say that because it shows he is guilty of [Penal Code section] 29800. It shows he was handling that gun; that one of those guns was his." "So this is not some maybe I touched the gun, or maybe when I pushed it away my fingerprints were on it; that is a very direct statement from him essentially confessing to [Penal Code

16

section] 29800, confessing to handling the gun, so, of course, he wishes he would have not said that, he wishes he had a lawyer advising him to stop talking, but he did, and that shows that he was handling one of those guns." "When you're looking at all of the facts, and you're using your common sense, the only reasonable conclusion is that both defendants in this case possessed those guns, they both had guns, they both had the right to possess them, so they are both guilty of [Penal Code section] 29800." Thereafter, the court gave instructions on jury deliberations, conduct, and the verdict forms.

B

*Forfeiture*

" ' "[A] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and *also* requested that the jury be admonished to disregard the perceived impropriety." ' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674, italics added.) Here, defense counsel objected only to the prosecutor's hypothetical of a shooting occurring as "pure speculation." Defense counsel in that regard failed to request that the jury be admonished to disregard the perceived impropriety. More importantly, defense counsel did not object to the prosecutor's possession arguments and did not assert that "the prosecution was incorrectly urging the application of a robbery-possession analysis (plus knowledge of presence)," as defendant now advances on appeal. Defendant has thereby forfeited the prosecutorial error argument.

Further, defendant agrees the jury instructions provided by the trial court were correct. Defendant believes, however, that defense counsel "should have requested clarifying instructions."[4] "[B]ecause the instruction given was correct, it was incumbent

---

[4] We note defendant's argument with regard to the need for a clarifying instruction or clarifying instructions is confusing. As we can best glean, defendant believes his trial

17

on defendant[] to request clarifying language.  [His] failure to do so [forfeited] the issue."  (*People v. Hardy* (1992) 2 Cal.4th 86, 153.)   Accordingly, we deem forfeited defendant's argument regarding the need for clarifying instructions.

## C

### *Ineffective Assistance Of Counsel*

Anticipating our finding of forfeiture, defendant argues constitutionally effective counsel would have objected "more thoroughly to the prosecution's misleading arguments" and requested clarifying instructions as to possession and specific intent.  The People do not address this argument.  The People maintain the prosecutor's argument regarding the law of possession was legally correct and there is no reasonable likelihood the jury interpreted the prosecutor's remarks to negate the requisite specific intent.

" 'A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.' [Citation.]  Defendant advances that claim here.  He bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno*, *supra*, 60 Cal.4th at p. 674.)

" 'Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*People v. Centeno*, *supra*, 60 Cal.4th at pp. 674-675.)  When the record on direct appeal sheds no light on why counsel failed to act in the manner challenged, defendant must show that there was " ' " 'no conceivable tactical purpose' " for counsel's act or omission.' " (*Id.* at

---

counsel should have "request[ed] a clarification or tailoring of the intent instruction" and/or clarification that the right to control a gun is insufficient to establish possession.

p. 675.)  " '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one . . . .' [citation], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence.' "  (*Ibid.*)

In his closing argument, defense counsel countered the prosecutor's closing argument regarding knowledge and possession.  He told the jury that, "[i]f there is a disagreement about the law, you have the instructions, you can ask for more direction, if necessary."  As defendant acknowledges, the appropriate instructions were provided to the jury by the trial court.  Defendant's trial counsel further specifically addressed the elements of knowledge and possession, and the prosecutor's theories.  From his closing argument, we understand defense counsel's strategy was to focus on the lack of evidence that defendant touched either of the guns and the lack of evidence that defendant and Wandick had a close relationship.  Defendant's trial counsel thus made a tactical choice to undermine the prosecutor in his own closing remarks and to direct the jury to the instructions that were correct.  For this reason, defendant has failed to show that there was no conceivable tactical purpose for his trial counsel's actions and thus his ineffective assistance of counsel claim fails.

Defendant attempts to use *Jeffers* as an example where there was an occurrence of instructional error with regard to intent.  First, defendant acknowledges the trial court in this case provided the jury with the correct instructions.  Second, *Jeffers* does not assist with the ineffective assistance of counsel inquiry because that case did not consider an ineffective assistance of counsel claim.  We thus fail to see the relevance or pertinence of *Jeffers* in this context.

To the extent defendant asserts his counsel was ineffective for failing to object to the prosecutor's rebuttal argument, we disagree.  In that regard, *Johnsen* is on point. (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1165.)  In *Johnsen*, during opening argument, "the district attorney recited the jury instruction defining reasonable doubt," adding

additional commentary thereto. (*Id.* at p. 1162) "[The defendant's] counsel did not object at the time to the prosecution's characterization of the reasonable doubt standard. [¶] During closing argument, however, defense counsel directly confronted the prosecutor's opening comments." (*Ibid.*) During his rebuttal, the prosecutor once again commented on the reasonable doubt standard. (*Id.* at p. 1163.) After closing arguments, the court instructed the jury with the definition of reasonable doubt. (*Id.* at p. 1164.)

On appeal, the defendant argued his defense counsel was ineffective for objecting to the prosecutor's closing argument. (*People v. Johnsen*, *supra*, 10 Cal.5th at p. 1165.) Focusing on whether " 'the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission,' " the *Johnsen* court underscored that " 'the decision . . . whether to object to comments made by the prosecutor in closing argument is a highly tactical one.' " (*Ibid*.) In that regard, the *Johnsen* court contrasted the facts in that case with those in *Centeno*: "Instead of registering a contemporaneous objection, defense counsel appears to have made a tactical choice to undermine the prosecutor in his own closing remarks. In *Centeno*, we held that there was 'no reasonable tactical purpose' for defense counsel's failure to object to the prosecutor's use of an improper hypothetical that was reasonably likely to have misled the jury regarding the reasonable doubt standard. [Citation.] The prosecutor in *Centeno* mischaracterized the reasonable doubt standard for the first time during rebuttal arguments. By contrast the prosecutor in this case made nearly identical misstatements during both his opening and rebuttal arguments. Defense counsel may have made a strategic decision to rely on the counterarguments he had already made during his closing statement rather than objecting to the prosecutor's rebuttal statements. Such a tactical choice was not objectively unreasonable . . . ." (*Johnsen*, at p. 1165.)

For the reasons provided in *Johnsen*, as contrasted with *Centeno*, we conclude that defendant's trial counsel's potential tactical choice to not object to the prosecutor's rebuttal argument was not objectively unreasonable. As in *Johnsen*, defense counsel

responded to the prosecutor's possession and knowledge arguments during his own closing argument.  Defendant identifies no additional grounds for objecting to the prosecutor's rebuttal closing argument.  Thus, as in *Johnsen*, we conclude defense counsel appears to have made the tactical choice "to rely on the counterarguments he had already made during his closing statement rather than object[] to the prosecutor's rebuttal statements" and his tactical decision was not objectively unreasonable.  (*People v. Johnsen*, *supra*, 10 Cal.5th at p. 1165.)

### DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Murray, J.

/s/
Renner, J.